<p style="color:red; text-align:center">Corrected</p>

# In the United States Court of Federal Claims

|  |  |
|---|---|
| SELWYN KARP AND BARBARA ADAMS-KARP,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 23-926<br>Filed May 21, 2026 |

Ellen S. Brody, Roberts & Holland, LLP, New York, New York, for plaintiffs.
Richard J. Markel, Tax Litigation Branch, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Granting the Karps' cross-motion for summary judgment and
denying the government's motion for summary judgment**

The Karps brought this case seeking a refund of an overpayment for the 2016 federal tax year. Each party moves for summary judgment. The Karps made an overpayment in an earlier tax year that they intended to carry forward to 2016, but they did not file a 2016 tax return until October 2020. The parties dispute whether the Karps' request for an automatic six-month extension of time to file their 2016 federal tax return was valid. The government argues that the Karps failed to make a reasonable estimate of their 2016 liability, invalidating their extension request and rendering their tax return filing untimely. The Karps argue that their estimate was reasonable, that their filing was therefore timely, and that they are entitled to a refund of the extra money they paid above their tax liability for 2016.

The court agrees with the Karps that they should have received the six-month extension to file their 2016 taxes. When the Karps submitted their form 4868 requesting an automatic extension of time to file their 2016 taxes, they provided a reasonable estimate of their tax liability. Thus, they

1

are entitled to a refund of their tax overpayment for the 2016 tax year. The court will therefore grant the Karps' cross-motion for summary judgment and deny the government's motion for summary judgment.

## I.    Background

Selwyn Karp and Barbara Adams-Karp are both retired. JA99; JA191.[1] Mr. Karp handles the couple's tax filings (JA98-99) and has used Bezalel Levy as the couple's tax-return preparer for at least three years, including 2016, the tax year at issue in this case (JA99; JA102). For each year from 2013 to 2016, the Karps overpaid their taxes. JA64 (2013); JA68 (2014); JA71 (2015); JA75 (2016). Each year the Karps elected to have their overpayment applied to the next tax year rather than receiving a refund. *Id.* The Karps, through Mr. Levy, also requested an extension to file their tax return form 1040 for each of 2014, 2015, and 2016. JA185 (2014); JA186 (2015); JA187 (2016).

This case concerns the Karps' extension request for 2016. To request a six-month extension, Mr. Levy submitted a form 4868 to the IRS in April 2017. JA187; JA75; *see Application for Automatic Extension of Time to File U.S. Individual Income Tax Return*, IRS (2025), https://www.irs.gov/pub/irs-pdf/f4868.pdf. He reported an estimated total tax liability of $0, total payments (both paid in 2016 and carried forward from before) amounting to $511,788, and a balance of $0 due. JA75; JA187. The Karps made no additional payments in April 2017. *Id.* The parties agree that the Karps' total tax liability for 2016 wound up being less than the $511,788 balance that the Karps carried. The Karps filed their 2016 tax return on October 15, 2020 (JA270); their return showed a tax overpayment of $336,558 (JA191). The Karps requested that the overpayment be credited to the following tax year, 2017. *Id.*

---

[1] The parties filed a joint appendix incorporating documents relevant to their cross-motions. ECF No. 30. The court will cite the joint appendix with the designation JA.

In 2021, the IRS notified the Karps that the overpayment from their 2016 taxes could not be applied to their 2017 taxes. JA262-63. The IRS explained that the disallowance was because the "received date on your return is Apr. 02, 2021. The last day to file a timely claim or return for tax year 2016 was Oct. 15, 2020." JA263. The Karps responded with documents showing that their form 1040 for 2016 was marked as received by the IRS on October 15, 2020, the deadline to file a timely claim. JA268-70.

The Karps sued in this court in June 2023, seeking a refund of the overpayment from 2016. ECF No. 1. While the case was pending, the IRS agreed that the Karps had filed their 2016 taxes by the October 2020 deadline. JA23. The IRS mailed the Karps a refund check for $154,720.45 and credited a portion of the 2016 overpayment to the taxes the Karps owed for 2022. JA4-5 [¶¶23-26].

After the IRS issued the Karps the refund and credit, the government concluded that, even though the Karps had filed their 2016 tax return on October 15, 2020, the return was nevertheless untimely. The government now argues that the 2016 form 4868 extension request did not contain a reasonable estimate of the Karps' tax liability for that year. JA6 [¶38]. The government further argues that, because the estimate on the form 4868 was not reasonable, the extension request was void; the Karps' return was late; and they are not entitled to a refund. JA5-6 [¶¶29-38]. The IRS removed the credit to the Karps' 2022 taxes and seeks a return of the refund check it previously issued. JA5 [¶¶25-26]; JA8 [¶48].

The government now moves for summary judgment, and plaintiffs cross-move. ECF Nos. 23, 24. The court held a hearing on the motions on March 4, 2026. During the hearing, the court asked that the parties discuss settlement again. The parties filed a joint status report explaining that they had not settled the case. ECF No. 34.

## II.    Discussion

Rule 56(a) of the Rules of the Court of Federal Claims states, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court should not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the parties have cross-moved for summary judgment, "each motion is evaluated on its own merits." *Marriott International Resorts, L.P. v. United States*, 586 F.3d 962, 968-69 (Fed. Cir. 2009). Each motion must be denied if there is a genuine issue of material fact weighing against it. *Id.* at 969.

Under the tax code, a taxpayer seeking a refund must first seek a refund from the IRS. "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected … until a claim for refund or credit has been duly filed with the Secretary" of the Treasury. 26 U.S.C. § 7422(a). A refund claim with the IRS must be timely under 26 U.S.C. § 6511(a). Section 6511(a) requires the taxpayer to file a claim with the IRS "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." 26 U.S.C. § 6511(a). If a claim for a refund was filed within the time limit under § 6511(a), a suit for that refund can be brought in court. *See United States v. Dalm*, 494 U.S. 596, 602 (1990). A taxpayer has two years from the date the IRS mails a disallowance notice to file suit. *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1460 (Fed. Cir. 1998).

Section 6511(b)(2)(A) limits the total refund that a taxpayer can claim to the "portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return."

4

Section 6081(a) of the tax code gives the Secretary of the Treasury the authority to grant a "reasonable extension" for filing a tax return. Thus, Treasury regulations allow for "an automatic 6-month extension of time" for an individual to file his tax return if he meets certain requirements. 26 C.F.R. § 1.6081-4. But there is "[n]o extension of time for the payment of tax" under the regulations. *Id.* In other words, the time to file a return can be extended, but the time to pay cannot.

The IRS website provides three ways a taxpayer can request a six-month extension for filing a tax return. *Get an extension to file your tax return*, IRS (Sep. 19, 2025), https://www.irs.gov/filing/get-an-extension-to-file-your-tax-return; *see* ECF No. 24 at 13; ECF No. 33 at 50:7-16 (government noting at oral argument that all three extension request methods were available in 2016). Two options are electronic. JA279; ECF No. 24 at 13; ECF No. 33 at 45:2-11, 50:7-16. The first is to pay "what you owe using an online payment option and check the box that you are paying as part of filing for an extension." JA279. That method does not require an estimate of tax liability. ECF No. 33 at 45:2-10 (counsel for the Karps explaining at oral argument that the online payment extension request does not require a tax estimate); *id.* at 50:7-16 (government agreeing that the online payment option skips the tax estimate step); ECF No. 24 at 13. The second is to use the IRS's Free File service to electronically request an extension. JA279. The Free File option allows the taxpayer to use guided software or to fill out fillable forms online. *E-file: Do Your Taxes for Free*, IRS (April 2, 2026), https://www.irs.gov/e-file-do-your-taxes-for-free.[2]

---

[2] In their cross-motion for summary judgment, the Karps allege that both online methods for requesting an extension do not require the taxpayer to include an estimate of his tax liability for the year "so long as the entire amount thereof is covered by payments and credits." ECF No. 24 at 13. At the oral argument, the government stated that the Free File option requires the taxpayer to "file the 4868 electronically, which still requires filling out the whole form." ECF No. 33 at 50:13-15. Thus, the parties agree only that one method, the online payment option, allows the taxpayer to skip estimating his tax liability.

The third option is for the taxpayer to fill out an IRS form 4868. *Get an extension to file your tax return*, *supra*. The IRS advises that the form requires an estimate of how much tax the taxpayer owes for the year. *Id.* On form 4868, lines four, five, and six require relevant tax estimate information. *Application for Automatic Extension of Time to File U.S. Individual Income Tax Return*, *supra*. Line four requires an "[e]stimate of total tax liability for" the tax year in question. *Id.* at 1. The instructions on the form require the taxpayer to "[m]ake your estimate as accurate as you can with the information you have. If we later find that the estimate wasn't reasonable, the extension will be null and void." *Id.* at 3. Line five asks the taxpayer to list the total payments already made for the year. *Id.* at 1. Line six requests the tax balance due and can be calculated by subtracting the total in line five from the total in line four. *Id.* The "[a]mount you're paying" is listed on line seven. *Id.* The IRS will contact the taxpayer only if it has denied the request. *Id.*

The standard for estimating tax liability on a form 4868 is not rigid. "To require exactitude" for the form 4868 estimate "would be unreasonable." *Crocker v. Commissioner*, 92 T.C. 899, 907 (1989). Instead, "a taxpayer should be treated as having 'properly estimated' his tax liability, within [the tax regulations' meaning], when he makes a bona fide and reasonable estimate of his tax liability based on the information available to him at the time he makes his request for extension." *Id.* at 908.

### A. The 2016 extension request is valid because the Karps made a reasonable guess at their tax liability, accounting for their 2015 overpayment

The Karps made a reasonable guess at their tax liability when submitting their extension request, and their refund request was therefore timely.

The Karps' 2016 form 4868 listed $0 tax liability on line four of the form, $511,788 as the tax they had already paid for the year on line five, and a balance of zero tax due on line six. JA187; ECF No. 24 at 4. The estimate of zero tax liability on line four was incorrect, assuming the line

6

requests gross, rather than net, tax liability; the Karps' gross tax liability for 2016 was $131,201. ECF No. 23 at 3; JA191. The Karps believed the estimate of zero was correct because they had made substantial federal tax overpayments from earlier years, which would have been applied to 2016, plus they had made an additional estimated tax payment in June 2016, and they believed those payments collectively covered their tax liability for the year. JA75; JA187; ECF No. 24 at 3-4. Thus, the Karps listed the amount of money they thought they would still need to pay for 2016, a reasonable estimate of their net tax liability, given the information available to them. In fact, their tax payments more than covered their tax liability. While the Karps made a technical error in estimating net rather than gross tax liability, they correctly estimated that they would owe zero, and the technical error was not unreasonable enough to make the automatic extension void.

Courts have considered the validity of a form 4868 where the taxpayer understated the additional tax due. In *Crocker*, 92 T.C. at 903-04, the taxpayers underestimated their tax liability on their form 4868. They underpaid, and the IRS sent them a notice of deficiency. *Id.* at 900, 904. The Tax Court voided the taxpayers' automatic extension because of the underestimate. *Id.* at 911-12. The taxpayers had failed to account, or attempt to account, for large amounts of income for the relevant tax years. *Id.* at 909-10. The court reasoned that, as in similar cases, the taxpayers had not made a bona fide estimate and thus had not paid anything close to what they owed. *Id.* at 909 (explaining that the taxpayer in another case had to "comply with the conditions of the proposed extension" to qualify for the extension). Likewise, in *Clayton v. Commissioner*, 102 T.C. 632, 647, 651 (1994), the taxpayers estimated their tax liability on their form 4868 as zero and underpaid their taxes. The Tax Court invalidated the taxpayers' automatic extension request, noting that the taxpayers "were well aware" of substantial income that they had not mentioned on the form. *Id.* at

651. But in both cases, the taxpayers' underestimates resulted in their underpaying their taxes. In both cases, the government *lost* money because of a taxpayer's underestimate.

At the oral argument, the government noted that it was not aware of any case in which a party underestimated his or her tax liability, paid the government *too much* money, and was still denied an automatic extension. ECF No. 33 at 27:8-17. That is because the statute and Treasury regulations are designed primarily to ensure that the government timely receives the money it is due, rather than ensuring that the government receives all tax returns by a particular date. "While taxpayers are given latitude in filing their returns, the regulations expressly prohibit an extension of time for the payment of taxes due." *Gabelman v. Commissioner*, 86 F.3d 609, 612 (6th Cir. 1996) (discussing the 1995 Internal Revenue Code); *see* 26 C.F.R. § 1.6081-4(c) (an automatic extension delays filing but cannot delay payment of taxes). Thus, the IRS should not ordinarily withhold the so-called automatic extension because of technical errors that do not result in a delay in the government's receiving money.

Here, the Karps' incorrect estimate had no effect on their payment at the time they filed their form 4868; the Karps correctly believed they would have a net zero tax liability due to an earlier overpayment, and the IRS had the overpayment in its possession. JA68; JA71. The Karps' failure to note their gross liability did not keep the IRS from accessing the money to which it was entitled. The technical error on their 2016 form 4868 extension form did not leave the government short on what it was owed.

The government argues that when the Karps filed their 2016 form 4868, they had not yet paid their 2016 taxes because the money had not yet been carried over from 2015, so their estimate was unreasonable. ECF No. 28 at 1-4. But beginning in at least 2014, each year the Karps provided a large overpayment that would cover the following year's taxes. JA68 (showing an overpayment

of $380,662.13 for 2014); JA71 (showing an overpayment of $427,742.00 for 2015). Once the Karps filed their 2015 return, the carryover payment would be available for the 2016 tax year and deemed paid on April 15, 2017. *See* 26 U.S.C. § 6513(b)(2) ("Any amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return under section 6012 for such taxable year (determined without regard to any extension of time for filing such return)."); *see also* ECF No. 23 at 5 n.1. The Karps could elect to either carry forward the overpayment or request a refund. 26 U.S.C. § 6402(a). The Karps historically elected to carry forward their overpayments (*see* JA68), and once they did for 2015, the deemed payment date allowed them to count that money, residing in their account, as a payment toward their 2016 taxes. Thus, the Karps' estimate that they would owe zero for 2016, once they filed their tax return, was correct.

In its reply brief, the government raises another case, *FleetBoston Financial Corp. v. United States*, 483 F.3d 1345 (Fed. Cir. 2007). ECF No. 28 at 1-4. In *FleetBoston*, the taxpayer underpaid for two years and had overpayments it had elected to apply to other tax years. 483 F.3d at 1347-48. The taxpayer sought to reduce its deficiency interest for the two years in which it had underpaid by applying the overpayments to those two years. The Federal Circuit affirmed this court's rejection of the taxpayer's theory because "a tax for a particular year is not paid by money generally held by the IRS, but rather by money assigned as payment of the tax for that year." *Id.* at 1350. Thus, the taxpayer could not elect to apply an overpayment to one tax year, 1985, and then later ask that the overpayment be applied to offset a tax deficiency for a different year, 1984. *Id.* at 1349. The government argues that, as in *FleetBoston*, the Karps had no overpayment assigned to 2016 when they filed their form 4868 because they had not yet filed a 2015 tax return assigning the 2015 overpayment to 2016. ECF No. 28 at 4.

But when the Karps filed their 2015 tax return, they did elect to carry over the overpayment to tax year 2016, and their form 4868 accounts for that. *See* JA191; JA187. And, as already discussed, that carryover payment was deemed paid, for tax year 2016, on April 15, 2017. Unlike the taxpayer in *FleetBoston*, when the Karps filed their 2016 tax return, they had no underpayment in some other year for which they owed money, and they had carried over their money to pay their 2016 taxes. It was reasonable for them to account for their expected carryover when filing their form 4868 for 2016.

The government also mentions the Karps' pattern of receiving automatic extensions and filing taxes late. The government takes issue with Mr. Levy's "atypical" filing process and the late filing fees the Karps have incurred as a result. ECF No. 23 at 1-2; *see, e.g.*, JA68. While the government may dislike Mr. Levy's and the Karps' filing practices (ECF No. 23 at 4-9), that does not render the Karps' estimate unreasonable. And although Mr. Levy describes a long timeline for the Karps' 2016 taxes, once they had filed their 2015 return, the overpayment would be available for the government and deemed paid as of April 2017. 26 U.S.C. § 6513(b)(2); *see* JA146-48.

B.      **The Karps' estimate was especially reasonable given that the government's position would only make paying taxes more complicated with no benefit to the government**

The government focuses on form 4868, which instructs each taxpayer to provide an estimate of tax liability "as accurate as you can with the information you have." JA79. The government argues that the instructions indicate that a taxpayer will not receive the automatic extension without an accurate estimate. But the automatic extension, no matter how requested, is designed for the taxpayer's benefit. In 2008, the IRS simplified form 4868. Extension of Time for Filing Returns, 73 Fed. Reg. 37362, 37363 (July 1, 2008). The IRS explained that form 4868 would require neither a signature nor an explanation of why the taxpayer was requesting the extension. *Id.* The IRS stated

that "[s]implifying, consolidating, and standardizing extension forms will reduce taxpayer burden." *Id.* The information form 4868 requires is designed to help the taxpayer understand how much he owes in taxes for that year; the form reminds the taxpayer that "[a]lthough you aren't required to make a payment of the tax you estimate as due, Form 4868 doesn't extend the time to pay taxes." *Application for Automatic Extension of Time to File U.S. Individual Income Tax Return*, *supra*.

Further, as the Karps point out, form 4868 is just one of three methods to receive an automatic six-month extension. Taxpayers can also use IRS Free File, or they can pay online and note that the payment is part of an automatic extension request. JA279. At least one of those methods—paying online—requires no estimate at all as long as the taxpayer's liability is covered by payments or credits. ECF No. 24 at 13-14; ECF No. 33 at 25:8-23. If a taxpayer overpays, the online portal shows no tax liability, and the taxpayer need not make any estimate of his or her tax liability. The government acknowledges that taxpayers who choose paying online can skip the estimate entirely and acknowledges that paying online was available for the 2016 tax year. ECF No. 33 at 50:7-16, 25:15-23; *see also* ECF No. 24 at 13. The online option thus would have allowed the Karps to receive the automatic extension without ever estimating their tax liability. The government did not incur harm from an incorrect estimate, when the taxpayer has the ability to avoid making an estimate at all. It would be unreasonable for the Karps to be penalized only because they chose an older method of payment that still includes a line requesting their estimate of their total tax liability. The law disfavors setting that sort of trap for the unwary taxpayer. *See generally Crown Coat Front Co. v. United States*, 386 U.S. 503, 515 (1967) (declining to require an unnecessary action that would only serve as "a procedural trap for the unwary"). Although the Karps chose the paper form 4868, they did not need to make more than a good-faith estimate.

The government relies exclusively on cases that predate both the 2008 changes to form 4868 and the 2014 advent of online options to request the automatic extension. ECF No. 24 at 13 (Karps' brief noting that the IRS added extension request methods starting after 2014); ECF No. 33 at 50:7-16 (government stating at oral argument that the three extension request methods were available in 2016). Although both *Crocker*, 92 T.C. at 907 (decided in 1989), and *Clayton*, 102 T.C. at 647, 650-51 (decided in 1994), discussed the need for a reasonable estimate of tax liability on form 4868, neither case considered the standard a court should impose on a taxpayer providing a tax estimate when other filing methods do not even require one.

In submitting their form 4868, the Karps were aware of their substantial overpayment for the 2014 tax year (JA68) and that they had overpaid again for tax year 2015 (JA71). The Karps therefore provided the reasonable, bona fide estimate required of them on form 4868.

### C.    The IRS initially accepted the Karps' form 4868

The IRS initially did not take issue with the Karps' form 4868 for 2016. This case arose because the IRS at first mistakenly thought the Karps had filed their 2016 tax return after the extended deadline. *See* ECF 1-2 at 35. After the Karps showed the government a postmarked return received on the extended deadline of October 15, 2020 (JA23; JA268-70), the IRS mailed them a check and credited their 2016 overpayment to their federal taxes for 2022 (JA4-5 [¶¶19, 22-26]). At least initially, the IRS thought the Karps' estimate of tax liability on their form 4868 was reasonable. As already discussed, the IRS had enough information to know that the Karps' account carried an overpayment rather than an underpayment. The IRS's actions before the Karps filed suit indicate that the agency was not concerned about the Karps' estimate of their gross tax liability.

### III.    Conclusion

For the reasons stated above, the court **grants** the Karps' cross-motion for summary judgment (ECF No. 24). The court **denies** the government's motion for summary judgment (ECF No.

23). On or before June 22, 2026, the parties **shall file** a joint status report reflecting whether an agreement can be reached on the amount of total damages to be awarded to the Karps, so the court can enter judgment.

**IT IS SO ORDERED.**

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge

13